1

2

3

4

5          UNITED STATES DISTRICT COURT

6          EASTERN DISTRICT OF WASHINGTON

7   JOHN C. HUDSON,

8                          Plaintiff,               NO:  11-CV-0137-TOR

9         v.                                        ORDER GRANTING IN PART AND
                                                    DENYING IN PART DEFENDANTS'
10   SPOKANE COUNTY,                                MOTION FOR SUMMARY
    WASHINGTON; GLEN HINCKLEY;                      JUDGMENT
11   WALTER LOUCKS; and OZZIE
    KNEZOVICH,
12
                          Defendants.
13

14        BEFORE THE COURT is Defendants' Motion for Summary Judgment

15   (ECF No. 32).  Also before the Court is Defendants' Motion to Declare Untimely

16   or in the Alternative Strike Plaintiff's Responses to Defendants' Motion for

17   Summary Judgment (ECF No. 46), and accompanying Motion to Expedite (ECF

18   No. 50).  These matters were scheduled to be heard without oral argument on

19   December 31, 2012, until Plaintiff filed a notice of hearing on December 28, 2012

20   requesting oral argument on January 11, 2013.  Richard D. Wall appeared on

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 1

behalf of Plaintiff.  Dan L. Catt appeared on behalf of Defendants. The Court has

reviewed the relevant pleadings and supporting materials, received the benefit of

oral argument and is fully informed.

BACKGROUND

Plaintiff John Hudson ("Hudson") claims that Defendants Glen Hinckley

("Hinckley") and Walter Loucks ("Loucks") are liable under 42 U.S.C. § 1983 for

constitutional violations including the use of excessive force, unlawful arrest, and

denial of due process.  ECF No. 1 at ¶ 18-20.  Hudson alleges that Defendants

Ozzie Knezovich ("Knezovich") and Spokane County failed to adequately train

and supervise Hinckley and Loucks in violation of Hudson's civil rights under 42

U.S.C. § 1983.  Hudson also asserts state law claims of false arrest and/or

imprisonment, assault and battery against Defendants Hinckley and Loucks; and

seeks to assert vicarious liability (respondeat superior) against Defendant Spokane

County.

FACTS

At 8:00 a.m. on September 15, 2009, Spokane County Deputies Loucks and

Hinckley, as well as Deputy Robert King ("King"), were directed by dispatch to

perform a welfare check concerning the safety of Hudson.  Defendant's Statement

of Material Facts, ECF No. 34 ("Def. SOF") at ¶¶ 9, 18, 27.  King spoke with

Ruby Cisneros, the former girlfriend of Hudson, and her son Joseph Cisneros, to

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 2

confirm information received by dispatch that Hudson made suicidal comments, threatened to harm anyone that came on his property, that he may be violent, that he had a machete, many knives, and a blow dart gun on the premises, and that the property was monitored with a video surveillance camera. *Id*. at ¶¶ 12-13. Ms. Cisneros expressed concern that Hudson may have killed himself over their break-up several days earlier, and that he had not answered his phone in several days. *Id.* at ¶¶ 12, 14, 20. All of this information was also reported to Loucks and Hinckley by dispatch. *Id*. at ¶¶ 19-26, 94-101.

Defendants Hinckley and Loucks opened the main gate in the chain link fence surrounding the perimeter of the home, and approached the front door. *Id*. at ¶¶ 28, 30. The Defendants observed a surveillance camera mounted under the eave of the house, what appeared to be siren type speakers in an upstairs window of the home, and a "beware of dog" sign in the window. *Id*. at ¶¶ 31-33, 105-106. Hinckley knocked on the front door and a dog began barking inside but no other sounds were heard in the house. *Id*. at ¶ 35, 107-08. Hinckley knocked again, at which point Hudson opened the front door and restrained the dog by its collar. *Id*. at ¶¶ 38-39. Hudson states that he was asleep when the deputies arrived at his home, that he turned the ringer on his phone off, and that he was awakened by the sound of his dog barking. Hudson Decl., ECF No. 44 at ¶¶ 1-2. Hudson was dressed only in a pair of shorts and socks. *Id*. at ¶ 2.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 3

1    The parties' versions of what happened next are diametrically opposed.

2    Defendants allege that Hudson did not say anything when he opened the door until

3    Hinckley asked if he was John Hudson, to which he replied he was. Loucks then

4    said "John Hudson it's the Sheriff's Department," to which Hudson responded

5    "yeah what do you want" and exited the residence of his own accord. Def. SOF

6    ¶ 40-44. Hudson contends that he asked the officers what they wanted and in reply

7    they asked him if he ever thought about committing suicide. ECF No. 44 at ¶ 3.

8    According to Hudson he replied that he had thought about suicide many times but

9    "I am still here and still kicking." *Id*. Hudson then recalls one of the officers

10   responded "[w]e don't need your mouth, just answer the fucking question," at

11   which point he turned to go inside. *Id*. at ¶ 4. In contrast, the deputies recall that

12   after asking Hudson if he thought about killing himself, he responded "Yeah I am

13   thinking about it." Def. SOF ¶ 47-48, 112-113. Loucks then asked Hudson if it

14   was because of issues with his girlfriend, and according to the Defendant Hudson

15   looked down and without responding turned and stepped toward the door. *Id*. at

16   ¶ 49-50.

17   According to the Defendants, Loucks told Hudson to stop and Hinckley said

18   "come here." *Id*. at ¶ 51. However, Hudson maintains that neither deputy told him

19   he was under arrest, that he was detained for any reason, or that he was not free to

20   go back in the house. ECF No. 44 at ¶ 5. Hudson states that he was "violently"

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 4

grabbed from behind and pulled off the porch into the yard. *Id*. at ¶ 6. Hinckley recalls that he attempted to stop Hudson from entering the home, in order to control the situation and continue performing the welfare check, by grabbing him from behind attempting to pull him away from the door. Def. SOF ¶ 53-58. However, Hudson grabbed on to the door frame and attempted to pull himself in the residence. *Id*. at ¶ 58. Loucks told Hudson to "let go and cooperate" but he maintained his grip. *Id*. at ¶ 59-60. Loucks alleges that Hudson threw his right elbow back at Louck's face, at which point Loucks grabbed a handful of Hudson's hair and pulled his head back. *Id*. Loucks contends that he told Hudson to let go, and Hudson swore at him several times and continued to struggle to get into the house. *Id*. at ¶ 61-64. The two Defendants ultimately pulled Hudson away from the door and off the stoop onto the front lawn. *Id*. at ¶ 65.

Hudson recalls that he "was struggling to keep from being thrown to the ground" and "was telling the officers repeatedly to let go of me and that they had no right to touch me or assault me." ECF No. 44 at ¶ 6. According to Hudson, the two Defendants threw him violently on the ground face first, pinned him on the ground with their weight on his back, and started yelling at him to put his hands behind his back. ECF No. 44 at ¶ 6-7. Hudson recalls that his hands were trapped under his body, he could not breathe, and that despite the deputies' instructions to put his hands behind his back, he could not free them. *Id*. Then, according to

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 5

Hudson, one of the officers "violently" punched him with a closed fist on the left

side of his back "about eight times." *Id*. at ¶ 7.

In contrast, the Defendants claim that Hudson continued to struggle and

refused to get on the ground despite being repeatedly ordered to lie down. Def.

SOF ¶ 66. Loucks put Hudson's head in a reverse head lock to force Hudson onto

the ground with his hands under him. *Id*. at ¶ 68-69. According to Defendants,

Hudson continued to fight, try to stand up, and defeat the head lock, at which point

Hinckley straddled Hudson's back and attempted to pull his arms out while

ordering him to place his hands behind his back. *Id*. at ¶ 70-75. Hudson continued

to struggle, so after warning him that he would strike him, Hinckley applied three

closed fist strikes to Hudson's back to get him to free his arms, while continuing to

give command to stop resisting and put his hands behind his back. *Id*. at ¶ 79-85,

130-134. Hudson released his arms and Hinckley handcuffed his wrists. *Id*. at 86.

At this time, Hudson told the officers he was having trouble breathing and

thought he might have a broken rib. ECF No. 44 at ¶ 13. Hudson states that at this

point the Defendants told him he was under arrest for "obstructing and resisting"

and that they were taking him to jail. *Id*. According to Loucks, he requested a

medical response, and Spokane Valley Fire Department recommended Hudson be

transported to a medical facility for evaluation. Def. SOF ¶ 87-90. The parties do

not appear to dispute that at this point Hudson was transported to the Spokane

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 6

1    Valley Hospital where he was admitted for further treatment for a broken rib and a

2    partially collapsed lung.  Def. SOF ¶ 91; ECF No. 44 at 4-5.  Hudson was cited and

3    released from custody upon his signature and promise to appear.  Def. SOF ¶ 143.

4    Shortly after his admission, Hudson was assessed as a high suicide risk.  *Id*. at 145.

5    DISCUSSION

6    **I.      Defendants' Motion to Declare Untimely or Strike Plaintiff's Response**

7            Pursuant to LR 7.1(c)(1), the opposing party has 21 days to serve and file a

8    response to a dispositive motion.  Further, the failure to timely file a memorandum

9    of points and authorities in opposition to any motion "may be considered by the

10   Court as consent on the part of the party failing to file such memorandum to the

11   entry of an Order adverse to the party in default."  LR 7.1(e).  Hudson filed his

12   response to the instant motion on December 10, 2012, well past the 21-day

13   deadline required under the Local Rules.  Defendants argue that Hudson failed to

14   notify the parties or seek permission from the Court to extend the deadline, and ask

15   that Hudson' response be stricken as untimely.[1]  ECF No. 47.  Hudson responds

16   ───────────────
[1] Defendants also argue that Hudson failed to comply with the Scheduling Order

17   (ECF No. 8) which requires all responses to dispositive motions to be filed and

18   served according to LR 7.1.  ECF No. 47 at 3-4.  However, as the Scheduling

19   Order explicitly refers to the Local Rule, the Court will limit its analysis to the

20   untimely filing under the Local Rules.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 7

that the delay was due to an error by Hudson's attorney in calendaring the date for filing a response, and asks the Court to grant an extension of time to file a late response due to excusable neglect.

Under Federal Rule of Civil Procedure 6(b), the court may allow a party to file a response to a motion for good cause, "on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). This standard permits courts, "where appropriate to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 388 (1993). The determination is left to the sound discretion of the district court. *See Rodgers v. Watt*, 722 F.2d 456 (9th Cir. 1983). In the Ninth Circuit, four factors will be weighed to determine whether the failure of a party to act was due to excusable neglect, including: (1) the danger of prejudice to the non-moving party, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the moving party's conduct was in good faith. *Pincay v. Andrews*, 389 F.3d 853, 860 (9th Cir. 2004)(en banc); *Pioneer*, 507 U.S. at 395. Further, "the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id*.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 8

First, the Court finds minimal prejudice to the non-moving party or impact on judicial proceedings. The delay in Hudson's response still allowed Defendants sufficient time to file a reply brief well before the hearing date set for December 31, 2012. On the other hand, the reason for the delay is not compelling, and the calendaring system was certainly within the reasonable control of Hudson's counsel. Last, the Court finds no evidence that Hudson has not acted in good faith. After weighing all of these factors the Court finds that Hudson's failure to file a timely response to Defendant's motion was due to excusable neglect. Therefore, the Court denies Defendants' motion to strike, and grants Hudson's motion to allow late filing of his responsive documents.

## II.    Defendants' Motion for Summary Judgment

### A. Standard of Review

The Court may grant summary judgment in favor of a moving party who demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the court must only consider admissible evidence. *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002). The party moving for summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 9

specific facts showing there is a genuine issue of material fact.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Id*. at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law.  *Id.* at 248.  Further, a material fact is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party.  *Id.*  The court views the facts, and all rational inferences therefrom, in the light most favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 327, 378 (2007).

**B. Judicial Estoppel**

"[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749 (*citing Davis v. Wakalee*, 156 U.S. 680, 689 (1895)).  In *New Hampshire*, the Supreme Court identified three non-exclusive factors to determine whether the doctrine of judicial estoppel applies, including: (1) whether the party's later position is clearly inconsistent with its earlier position; (2) whether the party succeeded in persuading a court to accept

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 10

that party's earlier position, so that judicial acceptance of an inconsistent position

in a later proceedings would create the perception that one court was misled; and

(3) whether the party asserting the inconsistent position would receive an unfair

advantage or be unfairly detrimental on the opposing party. *New Hampshire*, 532

U.S. at 750-51.

The facts outlined above resulted in criminal charges of obstructing and

resisting arrest against Hudson.  Hudson, through counsel engaged in plea

negotiations and agreed to a Stipulation to Police Reports and Order of

Continuance ("Stipulated Order").  ECF No. 35-2.  The Stipulated Order included

the following provision:

I. Stipulation to Adjudication of Guilt based Upon Police Reports

Defendant understands and agrees that if the Defendant violates or fails to
comply with any of the terms and conditions set forth herein, the Court will
read the police reports and the documents and photographs attached to the
police reports.  The Court will decide if the Defendant is guilty of the
crime(s) listed above solely on that evidence.

Defendant understands that he/she has the right to object to the admissibility
and to contest the evidence presented against him or her and to present
evidence on his/her own behalf.  Defendant also understands and agrees that
he/she is giving up the right to contest and object to evidence in the police
reports.

*Id*.  This Stipulated Order was reviewed and approved by the court on October 30,

2009, and after Hudson complied with the conditions set forth in the Stipulated

Order the criminal case was dismissed on May 3, 2010.  Defendants contend that

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 11

1    had Hudson and his criminal counsel not made this stipulation, the State would

2    have continued with prosecution.  Thus, Defendants argue that judicial estoppel

3    bars Hudson from asserting facts "clearly inconsistent" with those he presented to

4    the court when negotiating and entering into the Stipulated Order.  ECF No. 33 at

5    5-7.

6          Hudson responds that the Stipulated Order only waived his right to object to

7    the admissibility of the reports at a future trial, but did not require any

8    acknowledgement that the facts in those reports were true or accurate.  ECF No. 43

9    at 15.  Thus, Hudson argues there is no inherent inconsistency between the

10   Stipulated Order entered in order to resolve the criminal case, and the claims

11   presented in the instant action.  The Court agrees.  The plain language of the

12   Stipulated Order indicates that Hudson only agreed that the Court would decide his

13   case based solely on evidence in the police report, and waived his right to object to

14   the admissibility of that evidence.  Hudson did not admit that the version of events

15   in those police reports was true or accurate, nor can the Court discern any position

16   taken by Hudson in the instant litigation that is "clearly inconsistent" with his

17   position in the criminal matter.  *See New Hampshire*, 532 U.S. at 750-51.  The

18   Court finds that the doctrine of judicial estoppel is inapplicable in this case.

19   **C. § 1983 Claims**

20

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 12

A cause of action pursuant to 42 U.S.C. § 1983 may be maintained "against any person acting under the color of law who deprives another 'of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Southern Cal. Gas Co., v. City of Santa Ana*, 336 F.3d 885 (9th Cir. 2003) (citing 42 U.S.C. § 1983).  The rights guaranteed by § 1983 are "liberally and beneficently construed." *Dennis v. Higgins*, 498 U.S. 439, 443 (1991).  Hudson's Complaint alleges constitutional violations including: (1) unlawful arrest; (2) the use of excessive force; and (3) violation of due process rights.[2]

### 1.  Unlawful Arrest

### a.  Detention under RCW 71.05.153

The Fourth Amendment applies to seizures of all persons, including those involving only a brief detention short of traditional arrest.  *See Davis v. Mississippi*, 349 U.S. 721, 726-27 (1969).  The Ninth Circuit has found that "seizure" of the mentally ill for the purposes of protective custody is analogous to a criminal arrest in the Fourth Amendment context, and therefore must be supported by probable cause.  *See Maag v. Wessler*, 960 F.2d 773, 775-76 (9th Cir.

---

[2] Defendants' motion does not appear to challenge the due process claim. However, Hudson's recently filed Notice of To-Be-Adjudicated Claims does not indicate intent to adjudicate a due process cause of action.  *See* ECF No. 31.  Thus, the Court presumes this claim was abandoned.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 13

1991).  Defendants Hinckley and Loucks contend they had authority to take

Hudson into custody pursuant to RCW 71.05.153(2), which states,

> (2) [a] peace officer may take or cause such person to be taken into custody
> and immediately delivered to a triage facility, crisis stabilization unit,
> evaluation or treatment facility, or the emergency department of a local
> hospital under the following circumstances: ….
>> (b) [w]hen he or she has reasonable cause to believe that such person
>> is suffering from a mental disorder and presents imminent likelihood
>> of serious harm or is in imminent danger because of being gravely
>> disabled.

Wash. Rev. Code § 71.05.153(2)(b).[3]  "Peace officer" includes a law enforcement

official of a public agency or governmental unit.  § 71.05.020(29).   "Imminent" is

defined as "the state or condition of being likely to occur at any moment or near at

hand, rather than distant or remote." § 71.05.020(20).  And "likelihood of serious

harm" means "[a] substantial risk that: (i) Physical harm will be inflicted by a

person upon his or her own person, as evidenced by threats or attempts to commit

suicide or inflict physical harm on oneself…." § 71.05.020(25)(a).  Finally, a

"mental disorder" includes "any organic, mental, or emotion impairment which has

substantive adverse effects on a person's cognitive or volitional functions."

§ 71.05.020(26).

---

[3] Former Wash. Rev. Code § 71.05.150(4) was amended and recodified at

§ 71.05.153(2)(b).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 14

Probable cause exists when "under the totality of the circumstances known to the arresting officers, a prudent person would have concluded there was a fair probability that [the defendant] had committed a crime." *United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986). Defendants contend that because they were dispatched to perform a welfare check and acted to detain Hudson under 71.05.153(2)(b), that they were working under a less restrictive standard akin to that articulated in *Terry v. Ohio*. *See Terry v. Ohio*, 392 U.S. 1, 21 (1968) (officer must have "specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant that intrusion.").

Defendants point to a litany of facts indicating sufficient cause to take Hudson into custody under RCW § 71.05.153(2)(b). These include the reports from Ms. Cisneros and her son that Hudson had threatened to kill himself and anyone who came onto his property, had access to weapons, and had been unresponsive for several days; and Defendants' testimony that in response to the question "are you going to kill yourself," Hudson replied "yeah I think I might." Def. SOF ¶¶ 12, 47-48, 112-13. Moreover, Defendants contend that when Hudson turned toward the door he was moving toward an unsecure area, perhaps with access to weapons that he could use to harm himself or others. ECF No. 33 at 14. Hudson makes no response to these arguments.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 15

The Court finds that pursuant to the plain language of § 71.05.153(2)(b), triable issues of fact exist as to whether Defendants Hinckley and Loucks had reasonable cause to believe that Hudson was suffering from a mental disorder and presented imminent likelihood of serious harm, regardless of whether the Court applies the standard of probable cause or the less restrictive requirement akin to *Terry*. Even taking into account the reports by Ms. Cisneros and her son that Hudson was threatening to commit suicide, and Hudson's alleged admission that he "might" kill himself, the Court finds that genuine issues of fact remain as to whether he was "suffering from a mental disorder" and presenting "imminent likelihood of serious harm." Wash. Rev. Code § 71.05.153(2)(b). Particularly, the Court finds that a reasonable jury could find that in the relatively short period of time Defendants had to assess Hudson, the "imminence" of serious harm did not rise to the level of "likely to occur at any moment or near at hand." § 71.05.020(20). Defendants' somewhat cursory observation of Hudson, with only a few sentences exchanged between him and the Defendants, is not sufficient for the Court to find as a matter of law that Defendants Hinckley and Loucks had reasonable cause under § 71.05.153(2)(b) to take Hudson into custody for a mental health evaluation.

### b. Probable Cause to Arrest

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 16

1    Under the Fourth Amendment, a seizure occurs when a law enforcement

2    officer, by means of physical force or show of authority, restrains a citizen's

3    freedom of movement.  *U.S. v. Mendenhall*, 446 U.S. 544, 553 (1980).  Freedom

4    of movement is restrained "only if, in view of all the circumstances surrounding

5    the incident, a reasonable person would have believed that he was not free to

6    leave."  *Id*. at 554.  "Arrest by police officers without probable cause violates the

7    Fourth Amendment's guarantee of security from unreasonable searches and

8    seizures, giving rise to a claim for false arrest under § 1983." *Caballero v. City of*

9    *Concord*, 956 F.2d 204, 206 (9th Cir. 1992).  As indicated above, probable cause

10   exists when "under the totality of the circumstances known to the arresting

11   officers, a prudent person would have concluded there was a fair probability that

12   [the defendant] had committed a crime." *United States v. Smith*, 790 F.2d 789, 792

13   (9th Cir. 1986).

14   As an initial matter, Defendants argue that Hudson was "seized" only after

15   he was "physically subdued."  *See U.S. v. Santamaria-Hernandez*, 968 F.2d 980,

16   983 (9th Cir. 1992)(*citing California v. Hodari D.*, 499 U.S. 621 (1991)); *see also*

17   *Brendlin v. California*, 551 U.S. 249, 254 (2007) ("there is no seizure without

18   actual submission; otherwise, there is at most an attempted seizure, so far as the

19   Fourth Amendment is concerned.").  Thus, according to Defendants, "by the time

20   [Hudson] was "seized for constitutional purposes" they had observed criminal acts

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 17

including refusing to comply with their commands, resisting arrest, and attempting

to assault Loucks.  ECF No. 33 at 17-18.  The Court finds this argument is based

on a misreading of the case law.  In *Hodari D.*, the Supreme Court found that a

fleeing suspect was not "seized" until he was tackled because he was not

submitting to the "show of authority" until that point in time. *Hodari D.*, 499 U.S.

at 629.  However, the Court specifically distinguished a mere "show of authority"

from "the application of physical force" under which "the quintessential 'seizure of

a person' under our Fourth Amendment jurisprudence – the mere grasping or

application of physical force with lawful authority, whether or not it succeeded in

subduing the arrestee, was sufficient." *Id*. at 624-26.  Thus, it is *only* in the absence

of physical force that an officer's show of authority must be accompanied by actual

submission to that assertion of authority.  *See U.S. v. Smith*, 633 F.3d 889, 893 (9th

Cir. 2011).  There is no dispute that laying hands on Hudson was "quintessential"

physical force and therefore qualifies as seizure under the Fourth Amendment well

before he was eventually "subdued" in handcuffs.  Thus, the appropriate question

is whether the Defendants had probable cause to arrest Hudson at the moment they

grabbed him on the front stoop of the house.

    Defendants argue they did have probable cause to arrest Hudson for

obstructing a law enforcement officer before they grabbed him, because Hudson

ignored their commands to "stop" and "come here" when he tried to enter the

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 18

house.[4]  Subsequently, Defendants maintain there was probable cause to arrest

Hudson when he attempted to grab onto the door to pull himself inside the house

and continued to actively resist, and probable cause to arrest Hudson for assault

when in process of which he intentionally a right elbow and Loucks' face.  ECF

No. 33 at 17-18.  Hudson contends that he was never told not to enter the house

and was grabbed from behind without warning.  ECF No. 43 at 13-14.  Further,

Hudson argues that there are material issues of fact as to whether Hudson failed to

obey a lawful command, committed any assault, or unlawfully resisted being taken

into custody.

        In the light most favorable to Hudson, the Court finds genuine issues of

material fact exist as to whether the deputies had probable cause to order Hudson

to stop and then to arrest him.  Although the Court recognizes that Hudson himself

testified that he "was struggling to keep from being thrown to the ground" and that

he told the Defendants to "let go" and "that they had no right to touch" him, a

genuine issue of fact still remains as to whether the Defendants had probable cause

---

[4] Obstructing a law enforcement officer occurs when a "person willfully hinders,

delays, or obstructs any law enforcement officer in the discharge of his or her

official powers and duties." Wash. Rev. Code § 9A.76.020; *see also State v. Little*,

116 Wash.2d 488, 497 (1991)(finding defendant's refusal to stop when requested

by police constituted obstruction of a public servant).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 19

1  to seize Hudson at the moment they grabbed him from behind and began to pull

2  him off the front porch.  *See* ECF No. 44 at ¶ 6; Def. SOF ¶ 51.  Despite

3  Defendants' assertion that they ordered Hudson to "stop" and "come here," the

4  Court cannot ignore Hudson's testimony that the Defendants did not tell him he

5  was being detained or that he could not go back in the house before Defendants

6  applied physical force and grabbed him from behind to prevent him from entering

7  the house.  ECF No. 44 at ¶ 4.  Thus, under the totality of the circumstances known

8  to the Defendants, including the reports from Ms. Cisneros and her son that

9  Hudson may be suicidal and had weapons on the premises, the Court finds a

10  reasonable jury could find that a prudent person would not have concluded that

11  Hudson had committed or was committing a crime.  *See U.S. v. Noster*, 590 F.3d

12  624, 629-30 (9th Cir. 2009).  Whether probable cause existed at the time Hudson

13  was seized requires factual determinations that must be left to the jury.

### c.  Qualified Immunity

15          Qualified immunity shields government officials from civil damages unless

16  their conduct violates "clearly established statutory or constitutional rights of

17  which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S.

18  800, 818 (1982).  In order to analyze a claim of qualified immunity, a court must

19  determine whether, in the light most favorable to the plaintiff, defendant's conduct

20  violated a constitutional right, and whether the right was clearly established at the

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 20

time of the alleged misconduct.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001),

*receded from in Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that it is

within the sound discretion of the district court to decide which of the two prongs

should be addressed first in light of the circumstances in the particular case).  If the

answer to either of these questions is "no" then the officers cannot be held liable.

*Glenn v. Washington County*, 673 F.3d 864, 870 (9th Cir. 2011).  For a right to be

clearly established, it

> must be sufficiently clear that a reasonable official would understand that
> what he is doing violates that right.  This is not to say that an official action
> is protected by qualified immunity unless the very action in question has
> previously been held unlawful; but it is to say that in the light of pre-existing
> law the unlawfulness must be apparent.

*Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (internal citations omitted).  Further,

under Ninth Circuit law, an officer who makes an arrest without probable cause

may still be entitled to qualified immunity if he reasonably believed there was

probable cause.  *Rosenbaum v. Washoe County*, 663 F.3d 1071, 1076 (9th Cir.

2011).

As discussed above, triable issues of fact remain as to whether the conduct

of Defendants Hinckley and Loucks violated Hudson's constitutional rights.

Moreover, the Court finds that Hudson's right to be free of unlawful arrest was a

clearly established right at the time of the alleged misconduct.  Defendants argue

that an objectively reasonable officer on notice that Hudson made statements that

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 21

1    he might kill himself, threatened to harm people coming onto his property, looked

2    disheveled, and allegedly did not respond to officer's commands, could reasonably

3    believe it was lawful to seize Hudson.  ECF No. 33 at 20-21.  However, the Court

4    finds that genuine issues of material fact preclude a holding that Defendants

5    Hinckley and Loucks are entitled to qualified immunity.  Specifically, Hudson

6    declared that he did not report to the Defendants that he was suicidal at the time of

7    the incident, and that he was not ordered to stop when he turned to enter his

8    residence.  Thus, whether Defendants Hinckley and Loucks reasonably believed

9    they had probable cause to arrest Hudson is a matter to be decided by the trier of

10   fact.

11          **2.  Excessive Use of Force**

12          In the Ninth Circuit, "[w]e analyze all claims of excessive force that arise

13   during or before arrest under the Fourth Amendment's reasonableness standard, as

14   guided by the Supreme Court's decision in *Graham v. Connor*, 490 U.S. 386

15   (1989)." *Coles v. Eagle*, --- F.3d ---, No. 11-16471, 2012 WL 6054760 (9th Cir.

16   Dec. 5, 2012).  "[T]he 'reasonableness' inquiry in an excessive force case is an

17   objective one: the question is whether the officers' actions are 'objectively

18   reasonable' in light of the facts and circumstances confronting them, without

19   regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397.

20   Moreover, "the 'reasonableness' of a particular use of force must be judged from

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 22

the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and "allow for the fact that police officers are often forced to make split second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id*. at 396-397.

Determining whether an officer's force was excessive or reasonable "requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id*. at 396. When assessing the governmental interests at stake under *Graham*, the court should pay careful attention to several factors, including: (1) the severity of the crime, (2) whether the suspect poses an immediate threat to the safety of the officers and others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. *Id*. at 396; *see also Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (the most important factor is whether the suspect poses an immediate threat to the safety of the officers or others). However, these factors are not exclusive and must be considered in light of the totality of circumstances in a particular case. *See Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir. 1994). For instance, courts may also consider "the availability of alternative methods of capturing or subduing the suspect." *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005). The Ninth Circuit has noted that this balancing

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 23

1  often requires the finder of fact to weigh disputed factual assertions and thus

2  summary judgment on excessive force cases should be granted "sparingly." *Lolli v.*

3  *County of Orange*, 351 F.3d 410, 415-16 (9th Cir. 2003).  To defeat summary

4  judgment, a plaintiff "must show that a reasonable jury could have found that the

5  officers' use of force was excessive."  *Id.*

6  　　　　First, under *Graham*, the Court must assess the nature and quality of the

7  alleged intrusion on Hudson's Fourth Amendment rights.  *See Graham*, 490 U.S. at

8  396.  "The gravity of the particular intrusion that a given use of force imposes

9  upon an individual's liberty interest is measured with reference to 'the type and

10  amount of force inflicted.'" *Young v. County of Los Angeles*, 655 F.3d 1156, 1161

11  (9th Cir. 2011); *see also Deorle v. Rutherford*, 272 F.3d 1272, 1279 (9th Cir.

12  2001)("we first assess the quantum of force used to arrest [suspect]").  Defendants

13  argue that the amount of force inflicted began at a very low level and only

14  escalated after Hudson repeatedly refused to comply with commands, actively

15  resisted, attempted to strike Loucks, and resisted efforts to handcuff him after he

16  was warned that he would be struck.  ECF No. 33 at 26.  Moreover, Defendants

17  note that they did not use weapons, tasers, knee strikes, or other "more intense"

18  means to subdue Hudson.

19  　　　　However, as argued by Hudson, it is undisputed that Hinckley struck

20  Hudson at least three times in the back with a closed fist.  It is also undisputed that

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 24

1  the force of these blows was sufficient to break one of Hudson's ribs and cause a

2  partial collapse of his left lung, which resulted in his admission to the hospital.

3  ECF No. 43 at 12.  Thus, despite Defendants' contention that they used the amount

4  of force began at a low level and could have been "more intense," the Court finds

5  that the harm experienced by Hudson was significant and must be weighed against

6  substantial government interests.

7       The first factor in evaluating the governmental interests at stake under

8  *Graham* is the severity of the crime at issue.  *Graham*, 490 U.S. at 396.

9  Defendants themselves concede that taking someone into custody for a mental

10 health evaluation or for obstructing an officer "would [not] be considered 'severe

11 crimes' on their face." ECF No. 33 at 23.  However, Defendants argue that had

12 they not intervened the situation could have escalated to a greater severity level.

13 The Court finds this argument unpersuasive.  The lack of serious criminal activity

14 by Hudson weighs heavily in favor of Hudson and provides minimal justification

15 for the use of force used by Defendants Hinckley and Loucks.

16      The second factor, commonly recognized as the most important, is whether

17 the suspect poses an immediate threat to the safety of the officers and others.  *See*

18 *Mattos*, 661 F.3d at 441.  Defendants argue they were facing an "exigent situation"

19 with a suspect reported to have suicidal tendencies, weapons on the premises, and

20 reportedly threatened to harm anyone who came on the property.  ECF No. 33 at

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 25

24.  According to Defendants, the threat level increased when Hudson turned toward the house and allegedly failed to follow their commands.  Hudson responds that the reports from Ms. Cisneros indicating possible harm to Hudson or others who came onto his property were not verified prior to Defendants arriving at Hudson's house.  ECF No. 43 at 8.  The Court acknowledges that the Defendants had information that Hudson had weapons in his home, which could present a threat to the safety of the Defendants and Hudson himself.  However, it is undisputed that Hudson came to the door wearing only shorts and socks and restrained his dog in order to voluntarily speak with the Defendants.  Moreover, as discussed in detail above, there is a material factual dispute as to whether Hudson failed to obey commands to stop when he turned to enter his home, at which point the Defendants grabbed him from behind and pulled him off the porch. Additionally, there are genuine issues of material fact as to whether Hudson was actively resisting at the time the three closed fist strikes were delivered, or whether he was unable to remove his arms because of the weight of the officers on his back at the time.  Thus the Court finds that while the immediacy of the threat to the Defendants was certainly not insignificant, this factor weighs slightly in Hudson's favor especially in the summary judgment context.

The third *Graham* factor is whether Hudson was actively resisting or attempting to evade arrest by flight.  *Graham*, 490 U.S. at 396.   As discussed

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 26

1    above, whether or not Hudson "resisted" or failed to comply with Defendants'

2    commands before he was grabbed from behind is a disputed issue of fact.

3    However, Hudson himself admits that he struggled and argued with officers after

4    he was pulled off of the porch in an attempt to prevent being thrown on the ground.

5    ECF No. 44 at ¶ 6.  Thus, particularly at the moment that the three closed fist

6    strikes were administered, the Court finds this factor weighs slightly in the

7    Defendants' favor if their actions were otherwise justified up to that point.

8         After weighing all of the *Graham* factors, the Court cannot find as a matter

9    of law that the force applied by the Defendants was objectively reasonable.

10   Genuine issues of material fact exist as to whether Defendants actions were

11   justified, and the Court finds that a reasonable jury could find that the force used

12   by the Defendants was excessive.

13        Moreover, the Court finds that the Defendants are not entitled to qualified

14   immunity based on the record before the Court on summary judgment.  As defined

15   above, qualified immunity shields government officials from civil damages unless

16   their conduct violates "clearly established statutory or constitutional rights of

17   which a reasonable person would have known." *Harlow*, 457 U.S. at 818.  In order

18   to analyze a claim of qualified immunity, a court must determine whether, in the

19   light most favorable to the plaintiff, defendant's conduct violated a constitutional

20   right, and whether the right was clearly established at the time of the alleged

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 27

1  misconduct.  *See Saucier*, 533 U.S. at 201.  As discussed in detail in the previous

2  section, in the light most favorable to Hudson, triable issues of fact exist as to

3  whether Defendants violated Hudson's Fourth Amendment constitutional rights.

4  As noted by the Ninth Circuit, "[t]hose unresolved issues of fact are also material

5  to a proper determination of the reasonableness of the officers' belief in the legality

6  of their actions." *Espinosa v. City and County of San Francisco*, 598 F.3d 528, 532

7  (9th Cir. 2010); *see also Glenn*, 673 F.3d at 870 (resolution of genuine issues of

8  fact as to whether officers' use of force violated Fourth Amendment was "critical

9  to a proper determination of the officers' entitlement to qualified immunity.").

10  Thus, the Court finds that genuine issues of material fact remain as to whether

11  Defendants Hinckley and Loucks are entitled to qualified immunity.

12  ### 3.  Municipal Liability/Failure to Train

13  The Supreme Court has held that local governments are "persons" who may

14  be subject to suits under § 1983.  *Monell v. Department of Social Servs.*, 436 U.S.

15  658, 690 (1978).   However, a municipality may only be held liable for

16  constitutional violations resulting from actions undertaken pursuant to an "official

17  municipal policy."  *Id*. at 691. As the Supreme Court articulated in *Monell*, the

18  purpose of the "official municipal policy" requirement is to prevent municipalities

19  from being held vicariously liable for unconstitutional acts of their employees

20  under the doctrine of respondeat superior.  *Id.*; *Pembaur v. City of Cincinnati*, 475

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 28

U.S. 469, 478-79 (1986); *Bd. of Cnty. Comm'ns of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997).  Thus, the "official municipal policy" requirement "distinguish[es] acts of the *municipality* from acts of *employees* of the municipality, and thereby make[s] clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur*, 475 U.S. 469, 479-80 (1986) (emphasis in original) (footnote omitted).  To prevail on a municipal liability claim, a plaintiff must show (1) plaintiff's constitutional rights were violated, (2) the municipality had customs or policies in place at the time that amounted to deliberate indifference, and (3) those customs or policies were the moving force behind the violation of rights.  *See Estate of Amos ex. rel. Amos v. City of Page*, 257 F.3d 1086, 1094 (9th Cir. 2001).

The Ninth Circuit recognizes four categories of "official municipal policy" sufficient to establish municipal liability under *Monell*: (1) action pursuant to an express policy or longstanding practice or custom; (2) action by a final policymaker acting in his or her official policymaking capacity; (3) ratification of an employee's action by a final policymaker; and (4) a failure to adequately train employees with deliberate indifference to the consequences.  *Christie v. Iopa*, 176 F.3d 1231, 1235-40 (9th Cir. 1999).  A plaintiff must also establish a direct causal link between the municipal policy and the alleged constitutional deprivation. *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 29

1      Defendants argue that Plaintiff cannot establish the existence of a City of

2   Spokane policy or custom (either official or unofficial) of excessive force in

3   violation of Hudson's civil rights.   Hudson responds that a reasonable jury could

4   find that the use of a closed fist strike was a common practice within the Spokane

5   County Sheriff's Department.[5]  To support this argument, Hudson cites to a

6   number of "Use of Force Reports" involving Defendants Hinckley and Loucks that

7   indicate the use of a closed fist, forearm, or knee when subduing uncooperative

8   subjects.  ECF No. 45-2.  Hudson also refers to a "Use of Force Opinion" by

9   Detective Richard Gere opining that the fist strikes to Hudson's lower back in this

10   case were "reasonable and necessary." ECF No. 45-1 at 19.  The Court finds the

11   evidence that Defendants Hinckley and Loucks have used closed fist strikes in

12   previous encounters with other individuals under circumstances unknown to this

13   Court is not adequate to show a policy or custom of excessive force by the City of

14   Spokane.  Similarly, Detective Gere's narrow finding that the use of closed fists in

15   Hudson's case was reasonable, is insufficient to raise a genuine issue of material

16   [5] Although Hudson's Complaint alleges a failure to adequately train and supervise

17   Defendants Hinckley and Loucks, he does not assert this argument with regard to

18   the municipal liability issue.  Thus, the Court declines to address this "category" of

19   official municipal policy sufficient to establish liability under *Monell*.  *See*

20   *Christie*, 176 F.3d at 1235-40.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 30

fact that an unconstitutional policy or custom of excessive force existed at the City of Spokane.  Moreover, Hudson completely fails to respond to Defendant City of Spokane's persuasive arguments that no evidence is offered to show the alleged policy or custom amounted to deliberate indifference, or that a policy or custom was the "moving force" behind the deprivation of Hudson's constitutional right. ECF No. 33 at 40-41.  Thus, the Court finds as a matter of law that the City of Spokane cannot be held liable for Hudson's § 1983 claims.

**D. State Law Claims**

**1. False Arrest/Imprisonment and Assault**

Defendants argue that the claims asserted by Plaintiff under Washington state law should be dismissed because Defendants Hinckley and Loucks are (1) entitled to qualified immunity under state common law, and (2) shielded from liability by a state statute.  ECF No. 33 at 30.  Plaintiff does not respond to these arguments.  As an initial matter, Defendants' argument that probable cause is a complete defense to false arrest/imprisonment is misplaced in light of the Court's ruling above that genuine issues of material fact exist as to whether there was probable cause to arrest Hudson.

Next, Defendants Hinckley and Loucks argue that their conduct meets the three part test for qualified immunity from state tort claims of false arrest and imprisonment when the officer (1) carries out a statutory duty, (2) according to

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 31

procedures dictated to him by statute and superiors, and (3) acts reasonably. *See Staats v. Brown*, 139 Wash.2d 757, 778 (2000) (*citing Guffey v. State*, 103 Wash.2d 144, 152 (1984).   For largely the same reasons detailed above, the Court finds genuine issues of material fact preclude a finding of qualified immunity under state common law.  These issues of fact include whether Defendants Hinckley and Loucks were carrying out a statutory law enforcement duty under RCW § 71.05.153, specifically, whether they had reasonable cause to believe that Hudson was suffering from a mental disorder that presented an *imminent* likelihood of serious harm.[6]  *See* Wash. Rev. Code § 71.05.153(2)(b). Additionally, whether the Defendants acted "reasonably" during the altercation with Hudson is a matter to be resolved by the trier of fact.  And as a final matter, state qualified immunity is not available "for claims of assault and battery arising

_____

[6] For this same reason, the Court is unpersuaded by Defendant Hinckley and Loucks's argument that they are protected from liability under RCW § 71.05.120 because their decision to detain Hudson for evaluation and treatment was performed in good faith and without gross negligence.  ECF No. 33 at 32-33; Wash. Rev. Code § 71.05.120.  Issues of fact exist as to whether the actions of the Defendants in detaining Hudson were taken in good faith and without gross negligence.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 32

out of the use of excessive force to effectuate an arrest." *See Staats*, 139 Wash.2d at 780.

Last, Defendants Hinckley and Loucks maintain that their conduct was privileged under RCW 9A.16.020 which provides statutory authority for the use of force by police officers. Wash. Rev. Code § 9A.16.020. Specifically, under the statute "[t]he use, attempt, or offer to use force upon or toward the person of another is not unlawful in the following cases: (1) [w]henever necessarily used by a public officer in the performance of a legal duty…." *Id*. Defendants argue that they were forced to make split-second decisions about whether to seize Hudson and ask the Court "not to second-guess the deputies' actions." ECF No. 33 at 34. However, as repeatedly held by the Court above, genuine issues of fact preclude a finding that the use of force by Defendants Hinckley and Loucks was reasonable or "necessarily used" as a matter of law. Summary judgment on the state law claims is denied.

### 2. Respondeat Superior

Under the theory of respondeat superior, an employer may be vicariously liable for an employee's negligence in causing injuries to a third person if the employee was acting within the scope of employment and in furtherance of the employer's interests. *See Breedlove v. Stout*, 104 Wash. App. 67, 70 (Ct. App. 2001). Defendants concede that it is "undisputed that Deputies Hinckley and

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 33

Loucks were acting within the scope of their employment when dispatched on September 15, 2009 to check on [Hudson]." ECF No. 33 at 35.  However, Defendants argue that Hudson has produced no "objective evidence" that Sheriff Knezovich or Spokane County were "somehow responsible" or "at fault" for the alleged violations.  *Id.*  This argument is inapposite with respect to the employer. Under the doctrine of respondeat superior there is no requirement that Hudson prove that the employer was at fault for the employee's violations, nor do Defendants cite to any binding Washington case law for this proposition.[7] Summary judgment on this claim against Spokane County is denied.  On the other hand, no evidence has been put forth by Plaintiff that would support Sheriff Knezovich's personal liability.

///

_____

[7] The only Washington case cited by Defendants provides no support for this argument.  *See McKinney v. City of Tukwila*, 103 Wash. App. 391, 408 (2000).  In *McKinney*, the court mentions in passing that plaintiff did not establish an action for false arrest because the officer's actions were reasonable and authorized under *Terry*, and therefore plaintiff has no claim against the City under a respondeat superior theory.  As indicated above, this case is distinguishable because the Court has already held that genuine issues of material fact remain as to whether Defendants' actions were reasonable.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 34

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Defendants' Motion to Expedite, ECF No. 50, is **GRANTED**.

2.  Defendants' Motion to Declare Untimely or in the Alternative Strike
    Plaintiff's Responses to Defendants' Motion for Summary Judgment,
    ECF No. 46, is **DENIED**.

3.  Plaintiff's Request to Allow Late Filing, ECF No. 54, is **GRANTED**.

4.  Defendant's Motion for Summary Judgment, ECF No. 32, is **GRANTED**
    in part and **DENIED** in part.  Defendant's Motion for Summary
    Judgment is **GRANTED** with respect to Plaintiff's § 1983 claims against
    the City of Spokane and all claims against Sheriff Knezovich.  As
    indicated herein, Defendant's motion is **DENIED** with respect to all
    other claims including Plaintiff's § 1983 claims against the remaining
    Defendants.

The District Court Executive is hereby directed to enter this Order and
provide copies to counsel.

**DATED** this 14th day of January, 2013.

*s/ Thomas O. Rice*

THOMAS O. RICE
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 35